## THE STATE v. KINLEY.

1. **Evidence:** IMPEACHMENT: FOUNDATION FOR. When it is sought to lay the foundation for the impeachment of a witness, the time and place of the alleged statement, and the person to whom it was made, should be given in the question.

2. ———: GOOD CHARACTER. Testimony is competent to prove the good character of the defendant up to the time the indictment was found; but evidence of good character subsequent to that time is incompetent.

3. ———: ———: NATURE OF THE CHARGE. When evidence is admitted touching the general character of the defendant, it ought to relate to the particular charge against him.

4. ———: ———: WEIGHT OF EVIDENCE. Evidence of good character is admissible in all criminal cases, the importance to be attached to it varying with the particular circumstances of each case.

*Appeal from Dubuque District Court.*

WEDNESDAY, JUNE 7.

THE defendant was indicted, tried, and convicted for perjury, and he appeals.

*Fred. O'Donnell* and *E. McCeney*, for appellant.

*M. E. Cutts, Attorney General*, for the State.

The State v. Kinley.

ROTHROCK, J.— I. The indictment charges that the defendant, in a preliminary examination of certain persons before one C. Leckie, a justice of the peace, did willfully and corruptly swear, testify and state falsely that certain wheat was his property, that he had not turned the said wheat over to Louis Smith to pay a debt, and that he did not recollect of telling Louis Smith to take the wheat away; whereas, in truth and in fact, as the defendant well knew, said wheat was not his property, and he then and there well recollected that he told Louis Smith to take said wheat away, etc.

The defendant procured the arrest of said Louis Smith and some other persons for malicious trespass in taking away certain wheat claimed by him, and it was on the examination of this charge before the justice that the alleged perjury was committed. On the trial of the indictment it appeared that the wheat in question was the property of the defendant, and the alleged perjury, if any, consisted in the defendant swearing that he did not give Smith permission to take it, or that he did not recollect of giving Smith such permission. Three witnesses for the State testified to an agreement between defendant and Smith by which Smith was to thresh and remove the wheat. This was not contradicted, and it was not denied that defendant testified at the examination that he did not recollect giving such authority. It was, therefore, an important question for the jury to find whether defendant *did so recollect*.

The defendant on the cross-examination of Louis Smith, a 1. EVIDENCE: witness for the State, asked, "Have you not said, impeach- yourself, that you thought the defendant half ment: foun- dation for. crazy, and did not know what he was doing at the time?" This question was objected to as incompetent, etc., and the objection was sustained.

Defendant claims this was error for the reason that the witness stated in his examination-in-chief that he did not observe the defendant was intoxicated at the time he testified before the justice. In this ruling there was no error. It was sought by the question to lay the foundation for impeachment, and time and place, and the person to whom the alleged

statement was made, should have been given in the question.

II.  The defendant sought to prove his good character up
to the time of the trial.  This was excluded, and
he was confined to the period prior to and up to
the finding of the indictment.  In this there was no error.
It was sufficient for all purposes to show good character
prior to finding the indictment, and as the State is precluded
from showing the opposite after that time, we know no rea-
son why the defendant should be permitted to go into that
inquiry.

2. ——: good character.

III.  The defendant sought to show his "good character
for truth and veracity up to the time of finding
the indictment."  Objection to this was sustained,
and only general character was allowed to be shown.  In this
there was error.  It is always permissible for a defendant to
show his general good character, or reputation, as to the trait
involved in the charge.  In this case the defendant's truth-
fulness was directly in question, and he should have been
permitted to show that his general reputation for truth was
good.  1 Philips on Ev., 643.  "In all cases when evidence
is admitted touching the general character of the party, it
ought manifestly to bear reference to the nature of the charge
against him."  1 Greenleaf on Ev., Sec. 54.

3. ——: ——: nature of the charge.

IV.  A number of witnesses testified to the general good
character of the defendant, and the court, in the
tenth instruction, directed the jury that good
character should only be received as a circumstance in cases
where a crime is sought to be solely established by circum-
stantial evidence.  The effect of this instruction was to entirely
take the question of character from the consideration of the jury,
because the evidence upon which a conviction was sought
was not circumstantial.  In this we think there was error.
Good character is admissible evidence *in all criminal cases.*
The importance to be attached to it necessarily varies accord-
ing to the varying circumstances of different cases.  Its weight
must be slight where the accusation of crime is supported by
the direct and pointed testimony of credible witnesses; and
it will seldom avail to control the mind in cases where the

4. ——: ——: weight of evidence.

evidence, though circumstantial, is reliable, strong, and clear. But in cases where the other evidence is nearly balanced, proof of good character is entitled to great weight. *Remson v. The People*, 43 New York, 6; Wharton's Amer. Crim. Law, 293. We are the more ready to hold this instruction to be prejudicial error for the reason that there is much in the evidence, as it is presented to us, tending to show that, at the time the defendant committed the alleged perjury, he was in such a state of intoxication as to raise a doubt as to his mental capacity to form the corrupt intent necessary to establish the crime.

There are other errors complained of, but as, in our opinion, there must be a reversal for those above enumerated, we deem it unnecessary to consider the case further.

The judgment of the District Court is reversed, and the cause remanded for a new trial.

REVERSED.